**Commonwealth v. Mockaitis**

C.P. of Cumberland County, no. 00-1692.

*M.L. Ebert Jr., district attorney,* for Commonwealth.
*Timothy L. Clawges,* for defendant.

BEFORE: BAYLEY, OLER AND GUIDO, *JJ*

BAYLEY, *J.,* February 12, 2001—On *October 10, 2000,* defendant, David Matthew Mockaitis, entered a plea of guilty to a count of driving under the influence in violation of the Vehicle Code at 75 Pa.C.S. §3731(a)(1)(4)(ii). It was defendant's second offense. On *November 13, 2000,* defendant was sentenced to pay the costs of prosecution, a fine of $300, and undergo imprisonment in the Cumberland County Prison for a term of not less than 30 days nor more than 23 months.[1] As required by Act 63 of 2000, the sentencing order contained the

---

1. The minimum term of 30 days imprisonment was mandated by the Vehicle Code at 75 Pa. C.S. §3731(e)(1)(ii).

following provision: "[a]n approved ignition interlock device shall be installed on each motor vehicle owned by defendant prior to restoration of the defendant's operating privileges by the Department of Transportation."

On *November 16, 2000,* pursuant to Pa.R.Crim.P. 1410(B)(1)(a)(v), defendant filed a timely optional post-sentence motion to modify his sentence by deleting this provision.[2] He maintains that Act 63 of 2000 is unconstitutional. The issues have been briefed and argued and are ready for decision.[3]

Act 63 of 2000 was enacted on June 27, 2000. The Act is titled, "An Act amending title 42 (Judiciary and Judicial Procedure) of the Pennsylvania Consolidated Statutes, providing for the use of ignition interlock systems and for restitution or identity theft." The Act establishes chapter 70 of the Judicial Code titled "Ignition interlock devices," and provides in pertinent part:

*"Section 7002. Ignition interlock systems for driving under the influence. . . .*

*"(b) Second or subsequent offense*—In addition to any other requirements imposed by the court, *where a person has been convicted of a second or subsequent violation of 75 Pa.C.S. §3731, the court shall order the installation of an approved ignition interlock device on*

---

2. Defendant does not challenge the other provisions in the sentencing order.

3. Under Rule 1410(B)(3)(a), the motion must be decided within 120 days of the date of filing unless an extension of 30 days is granted under subparagraph (3)(b).

*each motor vehicle owned by the person to be effective upon the restoration of operating privileges by the department. A record shall be submitted to the department* when the court has ordered the installation of an approved interlock ignition device. *Before the department may restore such person's operating privilege, the department must receive a certification from the court that the ignition interlock system has been installed.* . . .

"*Section 7003. Additional driver's license restoration requirements.*

"*In addition to any other requirements established for the restoration of a person's operating privileges under 75 Pa.C.S. §1548* (relating to requirements for driving under influence offenders):

"(1) *Where a person's operating privileges are suspended for a second or subsequent violation of 75 Pa.C.S. §3731* (relating to driving under influence of alcohol or controlled substance), or a similar out-of-state offense, and the person seeks a restoration of operating privileges, *the court shall certify to the department that each motor vehicle owned by the person has been equipped with an approved ignition interlock system.*

"(2) A person seeking restoration of operating privileges shall apply to the department for an ignition interlock restricted license under 75 Pa.C.S. §1951(d) (relating to driver's license and learner's permit) which will be clearly marked to restrict the person to operating only motor vehicle equipped with an approved interlock ignition system.

"(3) *During the year immediately following restoration of the person's operating privilege and thereafter until the person obtains an unrestricted license, the person shall not operate any motor vehicle on a highway within this Commonwealth unless the motor vehicle is equipped with an approved ignition interlock system.*

"(4) One year from the date of issuance of an ignition interlock restricted license under this section, if otherwise eligible, a person may apply for an additional replacement license under 75 Pa.C.S. §1951(d) that does not contain the ignition interlock system restriction.

"(5) *A person whose operating privilege is suspended for a second or subsequent violation of 75 Pa.C.S. §3731 or a similar out-of-state offense who does not apply for an ignition interlock restricted license shall not be eligible to apply for the restoration of operating privileges for an additional year after otherwise being eligible for restoration under paragraph (1).*

"Section 3. *The provisions of 42 Pa.C.S. ch. 70 shall apply to all persons convicted of a second or subsequent violation of 75 Pa.C.S. §3731 on or after the effective date of this section . . . .*" (emphasis added)

Section 4 of the Act provides that these provisions take effect on September 30, 2000.

Initially, the Commonwealth maintains that defendant lacks standing to challenge the constitutionality of Act 63 of 2000. A statute may not be challenged in the abstract. *Commonwealth v. Bell,* 512 Pa. 334, 516 A.2d 1172 (1986). The Commonwealth suggests that it is speculative as to what prejudice defendant will suffer, if any,

from an application of Act 63. We disagree. The restriction imposed by *the sentencing order* prohibits defendant from having his operating privilege restored for two years unless, after completing a first year of suspension, he obtains a restrictive license for a second year. There is nothing abstract about the prohibition contained in the sentencing order. Defendant has standing to challenge the statute.

Defendant maintains that Act 63 violates the equal protection clause of the Fourteenth Amendment to the United States Constitution, and Article 1, Section 26 of the Pennsylvania Constitution. Equal protection claims under the United States and Pennsylvania constitutions are analyzed using the same standards. *Commonwealth v. Albert,* 563 Pa. 133, 758 A.2d 1149 (2000). Legislation must be examined according to one of three tests: strict scrutiny, intermediate scrutiny, or, the most deferential, rational basis. *Smith v. Coyne,* 555 Pa. 21, 722 A.2d 1022 (1999). In *Smith,* the Supreme Court of Pennsylvania stated:

"Strict scrutiny is applied to classifications affecting a suspect class or fundamental right. Intermediate scrutiny is applied to important rights and 'sensitive' classifications. In all other cases, the challenged legislation will be upheld unless there is no rational basis for its enactment."

The privilege to operate a motor vehicle is not a fundamental right. *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). Nor is it an important right that triggers the application of the heightened intermediate scrutiny test. *Commonwealth v. McMullen,* 756 A.2d

58 (Pa. Super. 2000). Statutes dealing with the suspension or prohibition of operating privileges are analyzed under the rational basis standard. *Frantz v. PennDOT,* 168 Pa. Commw. 35, 649 A.2d 148 (1994). Act 63 creates a classification based upon ownership of a motor vehicle.[4] We are satisfied that this is neither a suspect nor sensitive classification requiring heightened scrutiny.[5] Therefore, we will examine the statute using the rational basis standard.

In *Curtis v. Kline,* 542 Pa. 249, 257, 666 A.2d 265, 269 (1995) the Pennsylvania Supreme Court stated:

"In applying the rational basis test, we have adopted a two-step analysis. . . . First, we must determine whether the challenged statute seeks to promote any legitimate state interest or public value. If so, we must next determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests." (citations omitted)

The first prong of the analysis is clearly met. Suspending the licenses of persons convicted of driving under

---

4. An offender convicted of a second or subsequent driving under the influence offense may obtain a restricted license after a one-year suspension if he or she owns a motor vehicle and it is equipped with an ignition interlock device. If the offender does not own a motor vehicle, or leases a motor vehicle, he or she must wait two years before driving privileges are restored. If the offender owns two or more vehicles, he or she must have an ignition interlock installed on all of the vehicles.

5. Suspect classes are limited to race, national origin, and for purposes of state, as opposed to federal law, alienage. *Small v. Horn,* 554 Pa. 600, 615, 722 A.2d 664, 672 (1998). Sensitive classes are limited to gender and legitimacy. *Id.*

the influence is a legitimate state interest. A classification which treats persons differently based upon their ownership of motor vehicles is another matter. The Supreme Court of Pennsylvania stated in *Curtis v. Kline, supra* at 254-56, 666 A.2d at 267-68:

"The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. . . . However, it does not require that all persons under all circumstances enjoy identical protection under the law. . . . The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, . . . and does not require equal treatment of people having different needs. . . . The prohibition against treating people differently under the law does not preclude the Commonwealth from restoring to legislative classifications, . . . *provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. . . . In other words, a classification must rest upon some ground of difference which justifies the classification and has a fair and substantial relationship to the object of the legislation. . . .*

"*Judicial review must determine whether any classification is founded on a real and genuine distinction rather than an artificial one. . . .* A classification, though discriminatory, is not arbitrary or in violation of the equal protection clause if any state of facts reasonably can be conceived to sustain that classification. . . . In undertaking its analysis, the reviewing court is free to hypoth-

esize reasons the legislature might have had for the classification. . . . If the court determines that the classifications are genuine, it cannot declare the classification void even if it might question the soundness or wisdom of the distinction. . . ." (citations omitted) (emphasis added)

Applying the above analysis to Act 63, we are satisfied that to treat offenders differently based upon the number of vehicles owned by each creates an arbitrary classification which does not bear a fair and substantial relationship to the object of the legislation. Legislation that prohibits a multiple DUI offender from operating a vehicle that is not equipped with an ignition interlock device would be reasonable. Legislation that prohibits the offender from operating a vehicle equipped with the ignition interlock device unless every vehicle the offender owns is also equipped with such a device is neither reasonable nor does it bear a rational relationship to the ultimate goal of limiting the driving privilege of the offender. Likewise, to require the offender to actually own a vehicle that is equipped with the device in order to secure a restricted license bears no reasonable relationship to the object of the legislation.

It does not take long to come up with numerous examples of just how arbitrary and unreasonable the classification in Act 63 is when applied to owners of multiple vehicles. It makes no sense, nor does it serve any legitimate purpose, to require an offender's spouse, or other person the offender owns a vehicle with, to operate that vehicle equipped with an ignition interlock device so that offender can operate a similarly equipped

separate automobile.[6] Nor is it rational to have the offender's child, attending college, equip a vehicle being used at school with such a device, simply because it is titled in the parent's name. Perhaps the most absurd result occurs in situations where the offender owns several vehicles which are operated solely by employees. A plumber with multiple service vehicles comes to mind. It serves no rational purpose to have all of those vehicles equipped with an ignition interlock device.[7]

The classification is no less arbitrary or unreasonable when applied to non-owners. An offender who is a member of a household in which all of the vehicles are leased, rather than owned, is prohibited from obtaining a restricted license. An offender who drives a vehicle titled in the name of a spouse, the student who drives a vehicle titled in his parent's name, and the employee using a company-owned vehicle, are all prohibited from obtaining a restricted license, even if the owner of the vehicle is willing to allow it to be equipped with an ignition interlock device. Again, it serves no rational purpose to require that the vehicle actually equipped with the device be owned by the offender.

---

6. We are not aware if it is even possible for an ignition interlock device to be programmed to operate using the breath samples of more than one person.

7. We have considered the possibility that an offender might be more likely to drive his or her unequipped vehicle in violation of a restricted license. However, this does not provide a rational basis for the classification. Ownership of the vehicles will not make the offender more or less likely to violate the law. If the offender cannot obtain a restricted license because of the inability to afford an ignition interlock device on all of his or her vehicles, is that person any less likely to violate the law by driving without a license?

In summary, limiting multiple DUI offenders following a one-year license suspension to a restricted license during a second year that prohibits them from operating a motor vehicle unless it is equipped with an ignition interlock device would be sufficient to accomplish the goal of the legislation. Adding the requirement that the offender actually own a vehicle, and that every vehicle owned by the offender be equipped with the device, is arbitrary, unreasonable, and therefore, unconstitutional.

Defendant further maintains that Act 63 violates the due process clause of the United States Constitution. Defendant's conviction for driving under the influence will result in a one-year suspension of his operating privilege under the Vehicle Code at 75 Pa.C.S. §1532(b)(3). Act 63 adds a second year to the suspension unless the Department of Transportation receives a certification from the sentencing court that an ignition interlock system has been installed on each motor vehicle owned by a defendant. In *Commonwealth v. Duffey,* 536 Pa. 436, 639 A.2d 1174 (1994), the Supreme Court of Pennsylvania stated that a license suspension is a collateral civil consequence and not a criminal penalty even when the suspension is triggered by a criminal conviction. See also, *PennDOT v. McCafferty,* 563 Pa. 145, 758 A.2d 1155 (2000). By amending the Judicial Code, the legislature in Act 63 has turned the courts of common pleas into an agent for the Department of Transportation in determining eligibility for the reinstatement of an operating privilege. The court is not merely notifying the department of a defendant's conviction as it does to trigger a one-year suspension under 75 Pa.C.S. §1542 (b)(3). Rather, the court determines eligibility for a restricted license, which

the department must issue if the court determines that defendant is eligible, but cannot issue absent that determination.

In *Sweeney v. Tucker*, 473 Pa. 493, 507-508, 375 A.2d 698, 705 (1977), the Supreme Court of Pennsylvania stated:

"[The] basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government. . . . The dividing lines among the three branches 'are sometimes indistinct and are probably incapable of any precise definition.' . . . Under the principle of separation of the powers of government, however, *no branch should exercise the functions exclusively committed [to the] other branch."* (citations omitted) (emphasis added)

Unlike the preparation of a presentence report when court personnel compile information for the court to use in exercising sentencing authority, and which is subject to challenge for accuracy by the defendant and the Commonwealth in the framework of an adversarial criminal case, Act 63 requires that the court exercise an executive function in furtherance of the collateral civil consequence to defendant of a license suspension for a conviction for driving under the influence. There is no mechanism for a defendant to seek a certification from the court that an ignition interlock system has been installed on each motor vehicle owned. Nor is there a mechanism for a defendant to challenge entitlement to a certification. If, as the agent for the Department of Transportation, the court makes an improper certification, the department is without recourse.

The function of the judicial branch is to apply and interpret the law in an adversarial framework. In *PennDOT v. McCafferty, supra,* the Supreme Court of Pennsylvania stated that the suspension of an operating privilege, even though driving is a privilege and not a right, requires adherence to procedural due process under the Fourteenth Amendment to the United States Constitution. Thus, defendant's interest in the operation of a motor vehicle is a protected one. That requires procedures that constitute due process of law. *Ingraham v. Wright,* 430 U.S. 651 (1977). The executive function engrafted upon the court by Act 63 of 2000 does not provide procedures that satisfy due process of law.

For the foregoing reasons, we conclude that Act 63 of 2000 does not meet constitutional requirements. Accordingly, the following order is entered.[8]

## ORDER

And now, February 12, 2001, it is ordered:

(1)   The motion of defendant for partial post-sentence relief, is granted.

(2)   The provision in the sentence of November 13, 2000, providing that "[a]n approved ignition interlock device shall be installed on each motor vehicle owned by defendant prior to restoration of defendant's operating privileges by the Department of Transportation, is vacated.

(3)   All other provisions in the sentence of November 13, 2000, shall remain in full force and effect.

---

8. This resolution makes it unnecessary to address defendant's further claim that Act 63 of 2000 violates Article III, Section 3 of the Pennsylvania Constitution by containing more than one subject.