**Harry J. SLOAN**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 5, 2003.
Decided April 11, 2003.

Timothy P. Wile, Asst. Counsel In-Charge, King of Prussia, for appellant.

Charles G. Nistico, Media, for appellee.

Before COLINS, President Judge, SMITH-RIBNER, J., PELLEGRINI, J., FRIEDMAN, J., COHN, J., SIMPSON, J., and LEAVITT, J.

OPINION BY Judge PELLEGRINI.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDot) appeals from an order of the Court of Common Pleas of Delaware County (trial court) sustaining Harry J. Sloan's (Licensee) appeal from PennDot's requirement that he install an ignition interlock device on all vehicles owned by him before his operating privilege could be restored.

On February 26, 2001, Licensee was convicted in New Jersey of Driving Under the Influence (DUI) in contravention of New Jersey's Motor Vehicle and Traffic Laws, N.J.S. § 39.4-50(a).[1] Upon receiv-

---

1. N.J.S. § 39:4-50(a) provides:

Except as provided in subsection (g) of this section, a person who operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or operates a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood or permits another person who is under the influence of intoxicating liquor, narcotic, hallucinogenic or habit producing drug to operate a motor vehicle owned by him or in his custody or control or permits another to operate a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood shall be subject

ing notification of the conviction, PennDot informed Licensee that due to his New Jersey conviction, his operating privilege would be suspended for one year pursuant to Section 1532(b) of the Vehicle Code[2] and the Pennsylvania Driver License Compact (Compact).[3] Also, because Licensee had previously been convicted of DUI in Pennsylvania in the 1980s, Licensee was further notified that following the completion of the one-year suspension, he would be obligated to equip his vehicles with the ignition interlock system,[4] and failure to comply would result in an additional one-year suspension of his operating privilege. Licensee filed a timely appeal to the trial court and a *de novo* hearing was held.

■ Finding that the one-year suspension of Licensee's operating privilege was proper based on his out-of-state DUI con-

viction, the trial court denied his appeal from the Section 1532(b) suspension and reinstated the one-year license suspension. However, concluding that PennDot lacked unilateral authority to impose ignition interlock device requirements when the trial court failed to do so, the trial court sustained that portion of Licensee's appeal and rescinded the ignition interlock requirement from the restoration of his operating privilege. This appeal by PennDot followed.[5]

■ PennDot contends that the trial court erred in rescinding the ignition interlock device requirement from the restoration of Licensee's operating privilege because it has an independent mandate to enforce the requirements of the Ignition Interlock Device Act (Interlock Act)[6]

[to community service and/or fine and/or sentence based upon the level of offense].

2. Section 1532(b) provides, in relevant part:

The department shall suspend the operating privilege of any driver for 12 months upon receiving a certified record of the driver's conviction of section 3731 (relating to driving under influence of alcohol or controlled substance) or 3733 (relating to fleeing or attempting to elude police officer), or substantially similar offenses reported to the department under Article III of section 1581 (relating to Driver's License Compact), or an adjudication of delinquency based on section 3731 or 3733.

3. The Driver License Compact is an agreement among most of the states to promote compliance with each party state's motor vehicle law. Pennsylvania became a party state to the Compact in 1996 by adopting Sections 1581–1858 of the Motor Vehicle Code. In order for PennDot to treat an out-of-state conviction as though it occurred in Pennsylvania, the out-of-state conviction must be from a state that has entered the Compact and enacted a statute to that effect. New Jersey is a party state. *See Seibert v. Department of Transportation, Bureau of Driver Licensing,* 715 A.2d 517 (Pa.Cmwlth.1998); N.J.S. §§ 39:5D–1—39:5D–14.

4. An ignition interlock system is defined as a system approved by PennDot that prevents a vehicle from starting until the driver provides a breath sample that registers an alcohol level of less than .025%. 42 Pa.C.S. § 7001.

5. Our scope of review in a driver's license suspension case is limited to determining whether the trial court's findings of fact are supported by competent evidence, whether errors of law have been committed or whether the trial court's determination demonstrates a manifest abuse of discretion. *Mazza v. Department of Transportation, Bureau of Driver Licensing,* 692 A.2d 251 (Pa.Cmwlth. 1997), *petition for allowance of appeal denied,* 551 Pa. 172, 709 A.2d 887 (1998).

6. 42 Pa.C.S. §§ 7001–7003. Section 7002 of the Act provides that for a second or subsequent offense, the court shall order the installation of an approved ignition interlock device on each vehicle owned by the licensee, stating, in relevant part:

Second or subsequent offense.—In addition to any other requirements imposed by the court, where a person has been convicted of a second or subsequent violation of 75 Pa. C.S. § 3731, the court shall order the installation of an approved ignition interlock device on each motor vehicle owned by the

where an individual has committed a second or subsequent DUI violation.

As a result of a Congressional "suggestion" that states enact repeat drunk driving laws containing certain penalties or a percentage of federal funding for highways would be withheld,[7] the General Assembly enacted the Interlock Act. Those penalties that needed to be added as a result of the federal mandate were added to the responsibilities of the sentencing court who heard the driving while intoxicated cases.[8] Because it was in response to a

> person to be effective upon the restoration of operating privileges by the department. A record shall be submitted to the department when the court has ordered the installation of an approved interlock ignition device. Before the department may restore such person's operating privilege, the department must receive a certification from the court that the ignition interlock system has been installed.
> 42 Pa.C.S. § 7002(b).

7. 23 U.S.C. § 164 provides, in relevant part: *Minimum penalties for repeat offenders for driving while intoxicated or driving under the influence*
   (a) Definitions.—In this section, the following definitions apply:
   * * *
   (5) Repeat intoxicated driver law.—The term "repeat intoxicated driver law" means a State law that provides, as a minimum penalty, that an individual convicted of a second or subsequent offense for driving while intoxicated or driving under the influence after a previous conviction for that offense shall—
   (A) receive a driver's license suspension for not less than 1 year;
   (B) be subject to the impoundment or immobilization of each of the individual's motor vehicles or the installation of an ignition interlock system on each of the motor vehicles;
   (C) receive an assessment of the individual's degree of abuse of alcohol and treatment as appropriate; and
   (D) receive—
   (i) in the case of the second offense—
   (I) an assignment of not less than 30 days of community service; or
   (II) not less than 5 days of imprisonment; and
   (ii) in the case of the third or subsequent offense—
   (I) an assignment of not less than 60 days of community service; or
   (II) not less than 10 days of imprisonment.

> (b) Transfer of funds.—
> (1) Fiscal years 2001 and 2002.—On October 1, 2000, and October 1, 2001, if a State has not enacted or is not enforcing a repeat intoxicated driver law, the Secretary shall transfer an amount equal to $1\frac{1}{2}$ percent of the funds apportioned to the State on that date under each of paragraphs (1), (3), and (4) of section 104(b) to the apportionment of the State under section 402—
> (A) to be used for alcohol-impaired driving countermeasures; or
> (B) to be directed to State and local law enforcement agencies for enforcement of laws prohibiting driving while intoxicated or driving under the influence and other related laws (including regulations), including the purchase of equipment, the training of officers, and the use of additional personnel for specific alcohol-impaired driving countermeasures, dedicated to enforcement of the laws (including regulations).
> (2) Fiscal year 2003 and fiscal years thereafter.—On October 1, 2002, and each October 1 thereafter, if a State has not enacted or is not enforcing a repeat intoxicated driver law, the Secretary shall transfer an amount equal to 3 percent of the funds apportioned to the State on that date under each of paragraphs (1), (3), and (4) of section 104(b) to the apportionment of the State under section 402 to be used or directed as described in subparagraph (A) or (B) of paragraph (1).

8. On the same day that the General Assembly passed the Interlock Act, it also passed an amendment to the Pennsylvania Crimes Code, 18 Pa.C.S. §§ 101–9183, making it a summary offense for a person required to operate only motor vehicles equipped with an approved ignition interlock system pursuant to the Interlock Act to operate a motor vehicle without such a system punishable by a fine of not less than $200 and not more than $1,000 and imprisonment for not more than 30 days. 18 Pa.C.S. § 7514. Section 7514 also makes it a summary offense to tamper with an inter-

federal reimbursement rather than as part of the Commonwealth's overall response to repeat offenders, the Interlock Act, as PennDot forthrightly concedes, is not a model of legislative clarity resulting in a number of challenges, including constitutional ones.[9]

We first addressed the Interlock Act as well as PennDot's authority to unilaterally impose the ignition interlock device requirement in *Schneider v. Department of Transportation, Bureau of Driver Licensing*, 790 A.2d 363 (Pa.Cmwlth.2002). In that case, the licensee had been convicted of his second DUI offense on May 7, 2000, and was sentenced to not less than 48 hours in the county prison, ordered to pay costs and a $300 fine, and required to surrender his license to the court, which forwarded the license to PennDot to begin credit on his one-year suspension. PennDot then notified the licensee that based upon his conviction, his license would be suspended for one year and he was required to have all vehicles owned by him equipped with an ignition interlock device before his driving privilege could be restored or else his license would be suspended for an additional year. Finding that the May 7, 2000 conviction was the licensee's first DUI conviction, the trial court sustained the one-year suspension; however, it rescinded the ignition interlock requirement concluding that Section 7002 of the Interlock Act allowed only a trial court to impose the requirement, and PennDot had no independent authority to impose such a requirement absent a court order.

On appeal to this Court, PennDot argued that it had an independent mandate under the Interlock Act to impose ignition interlock requirements upon repeat DUI offenders regardless of whether the trial court ordered installation. Concluding

---

lock system punishable by a fine of not less than $100.

**9.** In *Commonwealth v. Mockaitis,* 54 Pa. D. & C.4th 115 (2001), an *en banc* panel of the Court of Common Pleas of Cumberland County declared the Interlock Act unconstitutional because its treatment of individuals who had been convicted of driving under the influence based upon their ownership of motor vehicles bore no rational relationship to the legitimate state interest of suspending the operating licenses of persons convicted of driving under the influence, and, therefore, created an unreasonable classification in violation of the precepts of equal protection. The court reasoned:

Legislation that prohibits a multiple DUI offender from operating a vehicle that is not equipped with an ignition interlock device would be reasonable. Legislation that prohibits the offender from operating a vehicle equipped with the ignition interlock device unless every vehicle the offender owns is also equipped with such a device is neither reasonable nor does it bear a rational relationship to the ultimate goal of limiting the driving privilege of the offender. Likewise,

to require the offender to actually own a vehicle that is equipped with the device in order to secure a restricted license bears no reasonable relationship to the object of the legislation.

54 Pa. D. & C.4th at 124. The court further concluded that the Interlock Act violated the due process clause of the United States Constitution because it required the courts of common pleas, i.e., the sentencing courts, to act as an agent for PennDot in determining eligibility for the reinstatement of an operating privilege, and to exercise an executive function in furtherance of the collateral civil consequence to a defendant of a license suspension for a conviction for driving under the influence and providing no mechanism for recourse either by the defendant or PennDot if the court fails to make a certification or makes an improper certification. *Mockaitis* is currently pending before our Superior Court. *But see Commonwealth v. Etheredge,* 794 A.2d 391 (Pa.Super.2002), where our Superior Court upheld the Interlock Act against an attack on equal protection grounds concluding that the statutory scheme which treated borrowed vehicles differently than owned vehicles did not violate equal protection.

that although the licensee had two DUI offenses and pursuant to Section 7002(b) of the Interlock Act, the trial court was required to order installation of an ignition interlock device, Section 7002(b) specifically provided that **only** the court could order such installation, and, therefore, PennDot had no unilateral authority to impose ignition interlock device requirements in absence of a trial court order. *See also Watterson v. Department of Transportation, Bureau of Driver Licensing,* 816 A.2d 1225 (Pa.Cmwlth.2003).

PennDot, however, argues that *Schneider* is not applicable to this case because, unlike in *Schneider,* Licensee's second DUI conviction was out-of-state and Section 7003 of the Interlock Act[10] vests it with an independent duty to ensure compliance with the interlock installation requirement, especially where the triggering event, i.e., the second DUI conviction, occurred in another state where the court was not required, pursuant to Pennsylvania law, to order the interlock installation.

Specifically, PennDot relies on paragraph 1 of that Section, which provides:

> Where a person's operating privileges are suspended for a second or subsequent violation of 75 Pa.C.S. § 3731 (relating to driving under influence of alcohol or controlled substance), or a similar out-of-State offense, and the person seeks a restoration of operating privileges, **the court shall certify to the department** that each motor vehicle owned by the person has been equipped with an approved ignition interlock system. (Emphasis added.)

42 Pa.C.S. § 7003(1). However, nothing in this provision gives PennDot any authority whatsoever to do anything. All that it does is require the court to certify to PennDot that each vehicle has been equipped with an interlock device if one has been previously ordered. Under the Interlock Act, only Section 7002 deals with who has the authority to impose the interlock requirement, and that provision plainly vests the authority and responsibility to

---

**10.** That Section provides:

In addition to any other requirements established for the restoration of a person's operating privileges under 75 Pa.C.S. § 1548 (relating to requirements for driving under influence offenders):

(1) Where a person's operating privileges are suspended for a second or subsequent violation of 75 Pa.C.S. § 3731 (relating to driving under influence of alcohol or controlled substance), or a similar out-of-State offense, and the person seeks a restoration of operating privileges, the court shall certify to the department that each motor vehicle owned by the person has been equipped with an approved ignition interlock system.

(2) A person seeking restoration of operating privileges shall apply to the department for an ignition interlock restricted license under 75 Pa.C.S. § 1951(d) (relating to driver's license and learner's permit) which will be clearly marked to restrict the person to operating only motor vehicles equipped with an approved interlock ignition system.

(3) During the year immediately following restoration of the person's operating privilege and thereafter until the person obtains an unrestricted license, the person shall not operate any motor vehicle on a highway within this Commonwealth unless the motor vehicle is equipped with an approved ignition interlock system.

(4) One year from the date of issuance of an ignition interlock restricted license under this section, if otherwise eligible, a person may apply for an additional replacement license under 75 Pa.C.S. § 1951(d) that does not contain the ignition interlock system restriction.

(5) A person whose operating privilege is suspended for a second or subsequent violation of 75 Pa.C.S. § 3731 or a similar out-of-State offense who does not apply for an ignition interlock restricted license shall not be eligible to apply for the restoration of operating privileges for an additional year after otherwise being eligible for restoration under paragraph (1).
42 Pa.C.S. § 7003.

impose the ignition interlock device requirement upon a licensee who has been convicted of multiple DUI offenses solely in the trial court. Merely because the trial court has failed to impose the ignition interlock requirement for any reason does not somehow amend the Interlock Act to give PennDot the authority to impose such a sanction.

Moreover, PennDot's interpretation of Section 7003 of the Interlock Act creates two problems: first, because the General Assembly deemed to make the imposition of the interlock device part of the criminal sentencing process, PennDot's interpretation would give PennDot sentencing authority when administrative agencies do not possess sentencing authority; second, it would create the interesting anomaly that the trial court would be required to certify to PennDot that the interlock ignition system was installed, making the Courts of Common Pleas of this Commonwealth PennDot's compliance agency.

While we recognize the dilemma the Interlock Act creates, i.e., an individual who is convicted of a second DUI offense outside of Pennsylvania will likely escape the ignition interlock device requirement while an individual convicted of a second DUI offense in Pennsylvania will not, Section 7002 of the Interlock Act clearly provides that only "the court shall order the installation of an approved interlock ignition device," and we are bound by the clear language of the statute, 1 Pa.C.S. § 1921(b).[11] Even though the general consensus is that the Interlock Act needs reform to be workable, that does not mean that we should place in PennDot powers not given to it by the statute. PennDot,

instead, should seek to have the Interlock Act amended so that it becomes workable.

Accordingly, the order of the trial court is affirmed.

Judge SIMPSON dissents.

### ORDER

AND NOW, this *11th* day of *April,* 2003, the order of the Court of Common Pleas of Delaware County, No. 01–4475, dated January 23, 2002, is affirmed.

Judge COHN, concurring & dissenting.

Respectfully, I dissent.

In this case, PennDot was not unilaterally imposing upon Licensee an ignition interlock requirement. Rather, PennDot was reiterating the requirements of Section 7003(1) of what is colloquially known as the Interlock Act.[1] Under this Section of the statute, the burden is on the licensee whose repeat DUI conviction arose out-of-state, and who seeks restoration of his/her operating privileges, to obtain certification from a Pennsylvania court, presumably the court of common pleas of the county in which that person resides, that an interlock ignition system has been installed. To hold otherwise, would thwart the obvious intent of the legislature to control the licenses of individuals whose repeat DUI convictions or their equivalents occurred out-of-state.

The majority cites to Section 7003, highlighting the language that requires the court to certify to PennDot that each of the applicant's vehicles has been fitted with an approved interlock system, but concludes that "nothing in this provision gives PennDot any authority whatsoever to do anything." In a way, the majority is

---

11. That Section provides "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

1. 42 Pa.C.S. §§ 7001–7003.

correct. Section 7003 does not authorize PennDot to do anything if an applicant fails to submit a certification from a trial court that the interlock system has been installed. In fact, the statute specifically precludes PennDot from issuing an operator's license until this requisite is met. Far from being a requirement that *Penn-Dot* is imposing, it is rather a mandate from the *legislature* itself. A recidivist offender, such as Licensee in this case, must first have an interlock system installed before PennDot may issue the license.

This obligation, contained in Section 7003, is underscored by the language of 42 Pa.C.S. § 7002(a) which reads "Before the department may restore such person's operating privilege, the department must receive a certification from the court that the ignition interlock system has been installed." The legislature, in no uncertain terms, has itself limited the circumstances under which PennDot may issue a license. The majority does not focus on the very clear legislative intent, that a repeat offender is not to be issued a driver's license without first having an interlock system installed on each of his vehicles.[2]

To the extent that the majority draws its analysis of Sections 7002 and 7003 from *Schneider v. Department of Transportation, Bureau of Driver Licensing*, 790 A.2d 363 (Pa.Cmwlth.2002), I believe this Court's analysis in *Schneider* to be incorrect and I refer to my dissenting opinion in *Watterson v. Department of Transportation*, 816 A.2d 1225 (Pa.Cmwlth.2003) (Cohn, J. dissenting) for further explanation of my disagreement with the analysis in *Schneider*. Nonetheless, assuming *arguendo*, that the analysis in *Schneider* is correct, the factual circumstances of this case, nevertheless, distinguish it from *Schneider*.

In the present case, Licensee's second conviction for driving under the influence occurred out-of-state. *Schneider* involved two in-state convictions for DUI. Section 7002(b) of the Act, 42 Pa.C.S. § 7002(b), specifically applies to in-state convictions, *i.e.*, to "second or subsequent" violations of Section 3731 of the Vehicle Code, 75 Pa. C.S. § 3731. The decision in *Schneider* only considered Section 7002(b) of the Act. This Section, however, is not applicable to second or subsequent out-of-state DUIs. Instead, such out-of-state offenses are controlled by Section 7003(1) of the Act. When a second or subsequent DUI or "similar out-of-state offense" occurs, this Section specifically requires a court to certify to PennDot that "each motor vehicle owned by the person has been equipped with an approved ignition interlock system." 42 Pa.C.S. § 7003(1).[3] In other

---

**2.** The majority mentions constitutional concerns that may arise from the Interlock Act; however, such concerns were not briefed before this Court and, as such, are not appropriately addressed.

**3.** 42 Pa.C.S. § 7003. Additional driver's license restoration requirements

In addition to any other requirements established for the restoration of a person's operating privileges under 75 Pa.C.S. § 1548 (relating to requirements for driving under influence offenders):

(1) Where a person's operating privileges are suspended for a second or subsequent violation of 75 Pa.C.S. § 3731 (relating to

driving under influence of alcohol or controlled substance), or a similar out-of-State offense, and the person seeks a restoration of operating privileges, the court shall certify to the department that each motor vehicle owned by the person has been equipped with an approved ignition interlock system.

* * *

(5) A person whose operating privilege is suspended for a second or subsequent violation of 75 Pa.C.S. § 3731 or a similar out-of-State offense who does not apply for an ignition interlock restricted license shall not be eligible to apply for the restoration of operating privileges for an additional year

words, this Section essentially prohibits PennDot from restoring a person's operating privileges prior to receipt of such certification.

PennDot asserts that *Schneider* is not applicable to the case at bar, an argument that the majority opinion dismisses. (Majority Opinion at 109–10.) In effect, the majority applies the analysis of *Schneider* to the instant case, concluding that where the out-of-state trial court does not issue an order requiring installation of the interlock system, PennDot may not refuse to issue a license if the interlock system has not been installed.

The problem with applying the *Schneider* analysis to this case is manifest when viewing the facts of this case within the analytical framework established by this Court in *Schneider.* We stated there:

> Although Schneider had two DUI offenses and pursuant to Section 7002(b), the trial court was required to order installation of an ignition interlock device, that failure does not mean that PennDOT has been given authority to override the trial court's order and require installation. Section 7002 provides that only **"the court** shall order the installation of an approved ignition interlock device...." 42 Pa.C.S. § 7002(b). (Emphasis added). Because this provision gives a court the sole authority, PennDOT has no unilateral authority to impose ignition interlock device requirements if the trial court fails to do so. If the trial court fails to impose this requirement in a criminal proceeding, the district attorney can appeal the trial court's failure to do so as it would if the

trial court failed to impose any other mandatory sentence.

*Id.* at 366–67 (footnote omitted and emphasis in original). Applying this rationale to the instant case, the district attorney of the county in Pennsylvania in which Licensee resides, or the Pennsylvania driver's licensing authority itself, would have had to pursue an appeal in the New Jersey court system of the New Jersey conviction that has prompted this case. Since, of course, neither can do so, PennDot is not able to fulfill its statutory mandate, but must, instead, issue the license.[4] The majority has created a Catch–22 situation which requires a trial court order before PennDot may fulfill its statutory duty, but also requires a foreign trial court to issue such an order, which is something the foreign court simply lacks any authority to do.

The majority tacitly recognizes this absurdity, noting that:

> we recognize the dilemma the Interlock Act creates, i.e., an individual who is convicted of a second DUI offense outside of Pennsylvania will *likely* escape the ignition interlock device while an individual convicted of a second DUI offense in Pennsylvania will not. . . .

(Majority Opinion at 111) (emphasis added). More than just "likely," the majority's analysis **absolutely** insulates out-of-state violators from the obligation clearly intended and articulated by the legislature for such offenders.

I also disagree with the majority's conclusion that the present statutory scheme is unworkable. The majority bases its conclusion on what it suggests is ambiguous statutory language hastily drafted in

---

after otherwise being eligible for restoration under paragraph (1).

4. How either the district attorney or Penn-DOT would have even been aware of the

foreign criminal proceedings in time to take an appeal, even assuming they could be deemed to have standing to do so, are other issues nowhere addressed by the majority.

response to Congress' urging—"Even though the general consensus is that the Interlock Act needs reform to be workable, that does not mean that we should place in PennDot powers not given to it by the statute." (Majority opinion at 111.) Admittedly, the statutory language is not as clear as it could be; however, that does not render it ambiguous, unworkable or unconstitutional. The provisions themselves contain clear mechanisms for carrying out the policy and legislative goals of *gradually* returning recidivist DUI offenders to regular vehicle license operator status.

The suspension imposed is designed to protect the members of the public from the clear dangers imposed by recidivist violators. The interlock license provides an intermediate step, offering an opportunity to gradually return to full driving privileges, in a manner designed both to maximize the opportunity to eliminate further recidivism and to minimize the risk to the public of repeat DUI offenders returning to the road. By essentially requiring PennDot to restore Licensee's license, the majority, unintentionally yet severely, undercuts the clear goals of the Interlock Act, and eviscerates this mechanism. The unwarranted effect is to place both the traveling public and the recidivist violator himself at great risk, a result clearly not legislatively intended.

Based on the foregoing discussion, I would affirm the trial court order as to the reinstatement of the one-year license suspension, but reverse the trial court to the extent that it affirmed Licensee's appeal as to the interlock requirement.