834 A.2d 488

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**David MOCKAITIS, Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 14, 2001.

Decided Oct. 16, 2003.

6

John B. Mancke, Paul Richard Wagner, Harrisburg, for amicus curiae Pa. Assoc. of Criminal Defense Lawyers.

Stuart B. Suss, D. Michael Fisher, William H. Ryan, Robert A. Graci, West Chester, for Commonwealth of Pennsylvania.

Timothy Lee Clawges, Mechanicsburg, for David M. Mockaitis.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, and SAYLOR, JJ.

## *OPINION OF THE COURT*

Justice CASTILLE.

This is a direct appeal from the decision of a three-judge panel of the Court of Common Pleas of Cumberland County

granting limited post-sentence relief following appellee's conviction for driving under the influence of alcohol (DUI). 75 Pa.C.S. § 3731. The court below granted relief only to the extent that it vacated its original directive that ordered appellee to install an approved ignition interlock system on each of his motor vehicles as a condition precedent to restoration of his operating privileges by the Pennsylvania Department of Transportation (PennDOT or the Department). In granting this relief, the panel declared unconstitutional on its face certain provisions of Act 63 of 2000, codified at 42 Pa.C.S. §§ 7001–7003, which amended the Judicial Code to require sentencing courts to order installation of such interlock ignition systems on a serial DUI offender's motor vehicles and then to certify to the Department that such systems had been installed. *Id.* § 7002(b). The trial court found that the Act's vesting of responsibility in the trial court to order and certify installation of the systems was unconstitutional on equal protection grounds and on grounds sounding in both separation of powers and procedural due process.

On appeal, the Commonwealth challenges the jurisdiction of the trial court to entertain appellee's constitutional claims as well as the court's determination on the merits. Because we find no merit in either claim, we will affirm the court's modified judgment of sentence. As shall be explained, however, our determination that the portions of the Act which delegate responsibility to the trial courts to perform executive functions relating to the installation of ignition interlock systems cannot stand does not render Act 63's ignition interlock requirement unenforceable. Rather, we are satisfied that the offending provisions may be severed without rendering the legislative scheme incapable of execution. Indeed, the Department—the administrative agency that properly should discharge the executive function that Act 63 delegated to the judiciary—may employ the remaining valid portions of the Act to effectuate the legislative requirement that serial DUI offenders, who can have their driving privileges restored after an automatic one-year suspension, may do so only after securing an "ignition interlock restricted license" which allows an

offender to operate a motor vehicle only if it is equipped with an approved ignition interlock system.

Act 63 defines an "ignition interlock system" as: "A system approved by the department that prevents a vehicle from being started or operated unless the operator first provides a breath sample indicating that the operator has an alcohol level of less than .025%." 42 Pa.C.S. § 7001. The Act directs that where a person is convicted of a second or subsequent DUI offense, the sentencing court "shall order the installation of an approved ignition interlock device on each motor vehicle owned by the person," such installation to be effective at the time the Department would restore the serial DUI offender's operating privileges. *Id.* § 7002(b). The Act further requires that the sentencing court submit a record to the Department of the installation order. *Id.* If the offender applies to the Department for restoration of his driving privileges after his automatic one-year of suspension has expired, the Act further requires the sentencing court to provide the administrative agency with a "certification" that an appropriate ignition interlock system has been installed on each motor vehicle owned by the offender. *Id.; see also id.* § 7003(1). Once the court certifies that the systems are in place, the Act contemplates that the Department will issue an "ignition interlock restricted license," *i.e.,* one "which will be clearly marked to restrict the person to operating only motor vehicles equipped with an approved interlock ignition system." *Id.* § 7002(b), § 7003(2). After one year of driving under the restricted license, the offender, if otherwise eligible, may apply for a replacement license that does not contain the interlock restriction. *Id.* § 7003(4). Serial DUI offenders who do not apply for an ignition interlock restricted license are deemed ineligible to apply for the restoration of driving privileges for an additional year after their automatic one-year suspensions expire. *Id.* § 7003(1).

Act 63 was adopted in response to the coercive effect of a federal highway statute enacted on July 22, 1998, 23 U.S.C. § 164, which addresses, "Minimum penalties for repeat offenders for driving while intoxicated or driving under the influ-

ence." The federal statute provides that, "On October 1, 2000, and October 1, 2001, if a State has not enacted or is not enforcing a repeat intoxicated driver law," a portion of federal highway funds earmarked to the state will be diverted to other uses related to addressing drunk driving. *Id.* § 164(b)(1). The financial consequence/diversion then doubles for the succeeding fiscal years. *Id.* § 164(b)(2). The statute defines a qualifying "repeat intoxicated driver law" (*i.e.,* a state law which will be adequate to avoid diversion of federal highway funds) as one which, among other things, requires that a repeat DUI offender receive a license suspension for not less than one year and "be subject to the impoundment or immobilization of each of the individual's motor vehicles or the installation of an ignition interlock system on each of the motor vehicles." *Id.* § 164(a)(5)(A) & (B). With respect to the latter requirement, the Pennsylvania General Assembly opted to legislate a one-year interlock requirement as opposed to the more severe measure of impounding or immobilizing each of the recidivist offender's motor vehicles. The September 30, 2000 effective date of Act 63 obviously was designed to avoid the specter of the federal highway fund diversion.

The pertinent facts in the case *sub judice* are not in dispute: On May 17, 2000, appellee, who was then nineteen years of age, was charged with DUI pursuant to 75 Pa.C.S. § 3731(a)(4)(ii). On October 10, 2000, appellee entered a guilty plea. On November 13, 2000, the trial court sentenced appellee to a term of thirty (30) days to twenty-three (23) months of imprisonment. The minimum term was mandated by 75 Pa.C.S. § 3731(e)(1)(ii) for a second DUI offense. In addition, the court's judgment of sentence included a directive pursuant to Act 63 which ordered that "an approved ignition interlock device shall be installed on each motor vehicle owned by [appellee] prior to restoration of [appellee's] operating privileges by the [Pennsylvania] Department of Transportation."

Appellee moved to modify his sentence, arguing that Act 63 was facially unconstitutional on several grounds, and requesting vacatur of the directive that he install an ignition interlock

device on each of his motor vehicles as a condition to the restoration of driving privileges. The matter apparently was consolidated with three other cases (identified only by their docket numbers) for purposes of briefing and argument. On February 12, 2001, a three-judge panel of the Court of Common Pleas of Cumberland County (Bayley, Oler, and Guido, JJ.) issued an order and opinion granting partial post-sentence relief. The panel found that the provisions of Act 63 under which the sentencing judge had ordered installation of the interlock system(s) were unconstitutional on equal protection grounds and separation of powers/due process grounds. Accordingly, the panel vacated the order to the extent it required installation of the ignition interlock devices, but left the other provisions of the sentence in effect.

The Commonwealth appealed directly to this Court. Our jurisdiction is secure. 42 Pa.C.S. § 722(7) (Supreme Court has exclusive jurisdiction over appeals from final orders in matters where court of common pleas has held statute of Commonwealth invalid on constitutional grounds).

The Commonwealth presents two issues for our review: (1) whether the sentencing court had jurisdiction to entertain a post-sentence challenge to the constitutionality of the ignition interlock statute; and (2) whether the court below erred in holding the pertinent provisions of Act 63 to be unconstitutional. Since each issue presents a pure question of law, our review is plenary. *E.g. Navickas v. Unemployment Compensation Review Board*, 567 Pa. 298, 787 A.2d 284, 288 (2001) (citations omitted); *Commonwealth, Department of Transp. v. McCafferty*, 563 Pa. 146, 758 A.2d 1155, 1158 (2000).

The pertinent parts of the Act are as follows:

§ 7002. **Ignition interlock systems for driving under the influence**

(a) **First offense.**—In addition to any other requirements imposed by the court, where a person has been convicted for a first offense under 75 Pa.C.S. § 3731 (relating to driving under influence of alcohol or controlled substance), the court may order the installation of an approved ignition interlock

system on each motor vehicle owned by the person to be effective upon the restoration of operating privileges by the department. A record shall be submitted to the department when the court has ordered the installation of an approved interlock ignition device. Before the department may restore such person's operating privilege, the department must receive a certification from the court that the ignition interlock system has been installed.

**(b) Second or subsequent offense.**—In addition to any other requirements imposed by the court, where a person has been convicted of a second or subsequent violation of 75 Pa.C.S. § 3731, the court shall order the installation of an approved ignition interlock device on each motor vehicle owned by the person to be effective upon the restoration of operating privileges by the department. A record shall be transmitted to the department when the court has ordered the installation of an approved interlock ignition device. Before the department may restore such person's operating privilege, the department must receive a certification from the court that the ignition interlock system has been installed.

\* \* \* \*

### § 7003. Additional driver's license restoration requirements

In addition to any other requirements established for the restoration of a person's operating privileges under 75 Pa.C.S. § 1548 (relating to requirements for driving under influence offenders):

(1) Where a person's operating privileges are suspended for a second or subsequent violation of 75 Pa.C.S. § 3731 (relating to driving under influence of alcohol or controlled substance), or a similar out-of-State offense, and the person seeks a restoration of operating privileges, the court shall certify to the department that each motor vehicle owned by the person has been equipped with an approved ignition interlock system.

(2) A person seeking restoration of operating privileges shall apply to the department for an ignition interlock restricted license under 75 Pa.C.S. § 1951(d) (relating to driver's license and learner's permit) which will be clearly marked to restrict the person to operating only motor vehicles equipped with an approved interlock ignition system.

(3) During the year immediately following restoration of the person's operating privilege and thereafter until the person obtains an unrestricted license, the person shall not operate any motor vehicle on a highway within this Commonwealth unless the motor vehicle is equipped with an approved ignition interlock system.

(4) One year from the date of issuance of an ignition interlock restricted license under this section, if otherwise eligible, a person may apply for an additional replacement license under 75 Pa.C.S. § 1951(d) that does not contain the ignition interlock system restriction.

(5) A person whose operating privilege is suspended for a second or subsequent violation of 75 Pa.C.S. § 3731 or a similar out-of-State offense who does not apply for an ignition interlock restricted license shall not be eligible to apply for the restoration of operating privileges for an additional year after otherwise being eligible for restoration under paragraph (1).

42 Pa.C.S. § 7002(b).[1]

██ The Commonwealth recognizes that this statute may be challenged on constitutional grounds, but disputes the appropriate manner, timing and forum for the challenge. The Commonwealth argues that the sentencing court lacked jurisdiction to entertain the challenge because Act 63 merely establishes conditions for the restoration of driving privileges following a period of DUI license suspension. The Common-

---

1. Section 7001 is the definitional section, while subsections 7002(c) and (d) are not relevant here. Since subsection 7002(a) applies to first offenses for DUI, it is not directly implicated here. We note, however, that in terms of the executive functions it delegates to the judiciary, subsection 7002(a) suffers from the same constitutional infirmity as subsection 7002(b).

wealth argues that orders entered pursuant to statutory commands governing license suspension and restoration are not penalties or sentences as such, but are collateral civil consequences of a DUI conviction. Brief for Appellant at 10–12, citing *McCafferty, supra; Commonwealth v. Duffey,* 536 Pa. 436, 639 A.2d 1174 (1994), *cert. denied,* 513 U.S. 884, 115 S.Ct. 223, 130 L.Ed.2d 149 (1994); and *Plowman v. Commonwealth, Department of Transp.,* 535 Pa. 314, 635 A.2d 124 (1993). Because orders relating to licensure and suspension are not part of the penalty for the underlying crime, the Commonwealth argues, a criminal sentencing court lacks jurisdiction to entertain a post-sentence challenge to such matters.

The Commonwealth candidly admits that it is not entirely clear how a constitutional challenge to Act 63 should be mounted if not in the sentencing court, but suggests that one possible avenue would be for the offender to seek administrative relief from a hearing examiner. If unsuccessful in that venue, then the offender should file exceptions which would be reviewed by the Secretary of Transportation. If that review is again unsuccessful, then the offender should seek review in the Commonwealth Court. Because this is the general procedure in pure license suspension cases, and because a challenge to the constitutionality of a license suspension is not the same as a constitutional challenge to a criminal sentence *qua* sentence, the Commonwealth argues, the trial court lacked jurisdiction to entertain this challenge via a post-sentence motion.

Appellee counters by noting, among other arguments, that an ignition interlock order entered pursuant to Act 63 entails more than a mere suspension. Appellee argues that such an order also involves additional costs, penalties, restrictions on the use of one's property, "and the stigma of having to blow into a device to operate a vehicle." Brief for Appellee, 5–7. In a foreshadowing of his separation of powers argument, appellee also argues that Act 63 is different from other statutory license suspension/restoration schemes because it delegates ministerial functions to the sentencing court: *i.e.,* the sentencing court must (1) make a factual determination that a defendant is subject to the ignition interlock device

requirement by finding he is a second or subsequent offender; (2) if it finds that the defendant is a repeat offender, order him to install the device on each owned motor vehicle; and (3) if the defendant seeks restoration of his license, investigate and certify to the Department whether the ordered device is in place. Appellee notes that this Court has held that, "[a] consequence is civil in nature where, 'imposition has been vested in an administrative agency over which the criminal judge had no control and for which he had no responsibility.' " Brief for Appellee, 5, *quoting Duffey,* 639 A.2d at 1177, *quoting in turn Brewster v. Commonwealth, Department of Transp.,* 94 Pa.Cmwlth. 277, 503 A.2d 497, 498 (1986). Appellee argues that a sentencing judge attempting to comply with Act 63 has various responsibilities in determining if the Act applies in the first instance, in ordering compliance with the Act, and in determining and certifying to the Department that the offender has complied with the ignition interlock restriction. For these reasons, appellee concludes, the trial court had jurisdiction over his post-sentence challenge. Brief for Appellee, 5–7.

■ The trial court's opinion does not discuss the question of jurisdiction.[2] The trial court does note that the Commonwealth raised a perhaps-related argument that appellee lacked **standing** to challenge Act 63, apparently on the ground that it was speculative at that point whether appellee would suffer prejudice from application of the Act. The court rejected the standing argument with an analysis which we will quote, since we deem it helpful to our resolution of the jurisdictional question:

> The restriction imposed by **the sentencing order** prohibits defendant from having his operating privilege restored for two years unless, after completing a first year of suspension, he obtains a restrictive license for a second year. There is

**2.** The certified record contains neither the post-sentencing briefs nor a transcript of oral argument; thus, we cannot determine whether the Commonwealth raised its jurisdictional challenge below. The Commonwealth's failure to contest jurisdiction below is not fatal to its present claim, however, since subject matter jurisdiction cannot be waived. *E.g. In re Melograne,* 571 Pa. 490, 812 A.2d 1164, 1166 (2002).

nothing abstract about the prohibition contained in the sentencing order. Defendant has standing to challenge the statute.

*Commonwealth v. Mockaitis,* 54 Pa. D. & C.4th 115, 121 (2001) (emphasis in original).

This Court has recently discussed the often-misunderstood concept of jurisdiction.

[S]ome litigants, while believing they are raising a claim of subject matter jurisdiction, are actually posing a challenge to the tribunal's authority, or power, to act. *See Riedel v. Human Relations Comm'n of Reading,* 559 Pa. 34, 739 A.2d 121, 124 (1999). This confusion between the meaning of the terms "jurisdiction" and "power" is not surprising. While the terms are not synonymous, they are often used interchangeably by judges and litigants alike. *Id.* In *Riedel,* we teased out the distinctions between these terms, explicating that

[j]urisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

*Id.*

*In re Melograne,* 571 Pa. 490, 812 A.2d 1164, 1166–67 (2002). Viewing jurisdiction in this traditional light, we have no doubt that the trial court properly entertained the constitutional challenge to Act 63 on a post-sentencing motion.

The parties assume that the question of jurisdiction turns on whether or not the ignition interlock consequences of appellee's conviction, mandated by Act 63, amount to a criminal penalty. But, we do not believe that this is so. The statute imposes, among other things, an obligation upon the sentencing court to order installation of ignition interlock devices on all motor vehicles owned by the serial DUI offender. Since the statute refers to "other requirements imposed by the court" and speaks only of situations "where a person

has been convicted" of a serial DUI offense, it obviously was appropriate for the Court to attempt to discharge its responsibility under Act 63 by including the directive in its sentencing order. Indeed, since compliance with the ignition interlock requirement is a prerequisite to even a conditional restoration ·of driving privileges under Act 63, apprising the offender of the requirement in the sentencing order provides essential notice of the condition.

Moreover, it bears noting that the offender is not the only party who may be aggrieved by the trial court's sentencing order on Act 63 grounds. For example, in *Turner v. Commonwealth, Department of Transp.*, 805 A.2d 671 (Pa.Cmwlth. 2002), the trial court failed to include the ignition interlock system mandate in its order sentencing a repeat DUI offender, and the Commonwealth failed to appeal. The Department thereafter notified the defendant that she was required to install the systems on all owned vehicles in order to secure restoration of her driving privileges after her mandatory one-year suspension. The trial court sustained the defendant's appeal of the Department's imposition of an interlock restriction. Upon further appeal by the Department, the Commonwealth Court affirmed, holding that the Department should have appealed the failure to order installation of the system(s) after the sentencing order was issued, and that the Department had no authority "to override the trial court's order and require the installation of the ignition interlock system." 805 A.2d at 676.[3]

Because the ignition interlock requirement was an appropriate part of the court's initial sentencing order under the terms

**3.** *Turner* is but one in a series of Commonwealth Court opinions rejecting the Department's argument that it has an independent mandate and authority to impose ignition interlock requirements in instances where the trial court failed to do so in its sentencing order. *See McGrory v. Commonwealth, Department of Transp.*, 828 A.2d 506, 508, 2003 WL 21658630, *2–*3 (Pa.Cmwlth., July 16, 2003); *Sloan v. Commonwealth, Department of Transp.*, 822 A.2d 105, 110–11 (Pa. Cmwlth.2003) (en banc); *Watterson v. Commonwealth, Department of Transp.*, 816 A.2d 1225, 1227–28 (Pa.Cmwlth.2003); *Schneider v. Commonwealth, Department of Transp.*, 790 A.2d 363, 366–67 (Pa.Cmwlth. 2002).

of Act 63, there is no jurisdictional impediment to the court's entertaining a challenge to the constitutionality of the Act via a post-sentence motion. The Commonwealth's argument might have more force if Act 63 had vested executive and compliance responsibilities in the Department, rather than the court. But, the court unquestionably was competent to rule upon a controversy involving the very statute under which it had acted. This is so regardless of whether the ignition interlock requirement, viewed in isolation, is more like a collateral civil consequence of the serial DUI offense than a "penalty." The Commonwealth's "jurisdictional" complaint, in reality, implicates a mere procedural question concerning the **preferred** method of challenge. In this regard, we note, as the trial court did, that "[t]here is nothing abstract about the prohibition contained in the sentencing order." Rather, that initial order, which effectuated the explicit directives of the statute, erected a condition precedent to restoration of appellee's license. Accordingly, the trial court had jurisdiction to entertain the challenge at the post-sentence stage.

The cases cited by the Commonwealth do not support the claim that the trial court lacked jurisdiction. The issue in *Plowman* relevant to the Commonwealth's argument *sub judice* was whether a mandatory suspension of an operator's driver's license as a civil sanction for a conviction for drug possession was cruel and unusual punishment under the federal and the Pennsylvania Constitutions. This Court rejected the claim, concluding that the suspension was a collateral civil consequence of the criminal violation and not a criminal punishment. 635 A.2d at 127–28. The case arose as a license suspension appeal: hence, no issue was presented concerning the jurisdiction of criminal courts on post-sentence motions.

*Duffey* was also a license suspension appeal arising after the operator's guilty plea to the summary offense of underage drinking. The relevant issue was whether the license suspension was a criminal penalty such that the failure to apprise the operator of that consequence rendered his guilty plea invalid. This Court concluded that the suspension was a collateral civil consequence and not a criminal penalty and, thus, there was

no requirement that the operator be apprised of that consequence at the plea stage. 639 A.2d at 1176–77. As in *Plowman*, there was no issue presented concerning the jurisdiction of criminal courts on post-sentence motions. *Accord, McCafferty* (mandatory suspension of Pennsylvania driver's license resulting from DUI conviction in another state, pursuant to Driver's License Compact, constitutes collateral civil consequence; no issue involving jurisdiction of criminal courts respecting post-sentencing motions). Because none of these cases speak to the jurisdictional question at issue here, concerning the court's competence to hear claims at the post-sentence motion stage arising from a provision in the court's sentencing order, they certainly do not mandate the jurisdictional result argued by the Commonwealth.

 Turning now to the issue of the constitutionality of the statute, we note that a legislative enactment "is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." *McCafferty*, 758 A.2d at 1160, *citing Commonwealth v. Hendrickson*, 555 Pa. 277, 724 A.2d 315, 317 (1999); *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162, 165 (1996). Accordingly, "the party challenging the constitutionality of a statute has a heavy burden of persuasion." *McCafferty, supra, citing Barud, supra.*

The trial court found that appellee sustained his burden; specifically, the court determined that the provisions of the Act under which it ordered installation of the interlock systems were unconstitutional on both equal protection grounds and on separation of powers/procedural due process grounds. With respect to equal protection, the court recognized that driving was a privilege, not a fundamental right or a right triggering an intermediate level of scrutiny and, accordingly, rational basis review applied. Citing to this Court's decision in *Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265 (1995), the court noted that a two-part standard governed such review: (1) the statute must promote some legitimate state interest or public value; and (2), if it does, the classification adopted in the statute must be reasonably related to accomplishing the artic-

ulated state interest(s). The court determined that Act 63 satisfied the first part of the *Curtis* test but failed the second part.

Specifically, the court suggested that legislation which flatly prohibited recidivist DUI offenders from operating any vehicle that was not equipped with an ignition interlock device would be reasonably related to the legitimate state interest. But, the statute here went further because in the court's view (1) it requires offenders who own multiple vehicles to install the devices on all of those vehicles, even if other family members or employees primarily operate them; and (2) it made ignition interlock restricted licenses available only to those offenders who actually own vehicles. The court viewed these classifications as arbitrary and lacking a fair and substantial relationship to the legislative object and, therefore, unconstitutional. *Mockaitis*, 54 Pa. D. & C. 4th at 124–26.

The trial court then turned to the separation of powers claim, which it considered in tandem with its intertwined concerns for procedural due process. The court noted that Act 63 requires the sentencing court to order installation of the ignition interlock systems and then to ascertain and certify to the Department that the offender has installed such a system on each owned vehicle. It is the court certification—and not any investigation or action by the executive agency—which determines whether the Department will issue the restricted license. The court deemed this obligation imposed upon trial courts by Act 63 to be "an executive function in furtherance of the collateral civil consequence" of a conviction. *Id.* at 126. The court believed that this statutory arrangement raised a separation of powers concern because, " 'no branch [of government] should exercise the functions exclusively committed to [another] branch.' " *Id.* at 126, *quoting Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698, 706 (1977) (emphasis by trial court). In delegating this executive responsibility to the judiciary, the court asserted that Act 63 "has turned the courts of common pleas into an agent [sic] for the Department of Transportation in determining eligibility for the reinstatement of an operating privilege." *Id.* at 126–27.

As to procedural due process, the court noted that the statute was also problematic in that it made no provision for a mechanism by which the offender could seek a certification of compliance, or to challenge a failure of the court to certify compliance, nor does the Department have a remedy if the court, acting as agent for the Department, makes an improper certification. The court then noted that, even though driving is a privilege and not a right, suspension proceedings still must adhere to principles of procedural due process. *Id.* at 127, *citing McCafferty, supra.* In the court's view, "[t]he executive function engrafted upon the court by Act 63 of 2000 does not provide procedures that satisfy due process of law." *Id.*

We will take the separation of powers/due process argument first, since our resolution of that issue significantly narrows and helps to resolve the equal protection complaints. The Commonwealth's argument on separation of powers is notably brief. The Commonwealth notes that other provisions of the Motor Vehicle Code set forth obligations for DUI offenders such as attending an approved alcohol highway safety school or, in certain circumstances, completing court-ordered inpatient or outpatient programs. The Common-wealth argues that these provisions impose "monitoring and reporting requirements" upon trial courts which are "legally indistinguishable" from the requirements imposed on trial courts by Act 63. *See* 75 Pa.C.S. § 1548(f) (governing court-ordered intervention or treatment and providing, *inter alia,* that in instances where defendant fails to successfully complete program of treatment ordered by court, suspension shall remain in effect until court notifies Department of defendant's compliance). The Commonwealth then asserts that, to its knowledge, no existing court decision has called into question the constitutionality of Section 1548(f).

Appellee responds by citing precedent of this Court recognizing that legislation which infringes upon this Court's authority over state courts and their officers is constitutionally invalid. Brief for Appellee, 15, *citing Kremer v. State Ethics Commission,* 503 Pa. 358, 469 A.2d 593 (1983). Appellee

argues that it is critical that courts retain the power to supervise their own employees, including probation officers, who are court employees and who presumably would be enlisted to determine whether an offender's vehicles were equipped with ignition interlock devices. Appellee does not dispute that the General Assembly may promulgate substantive law and exercise its police powers broadly but, he argues, a statute must still be struck down if it interferes with the authority of a co-equal branch of government. Appellee also does not dispute that the General Assembly may delegate certain ministerial duties to the courts and court officers (such as the requirement of forwarding notices of conviction to the Department), but he submits that Act 63 goes much further than that because it "requires *affirmative* action from *the court and its employees* to determine whether a person qualifies for restoration of operating privileges." Brief for Appellee, 16 (emphasis original).

In appellee's view, Act 63 "necessarily interferes with the judicial branch of government by imposing duties which are executive, or legislative, in nature on judicial employees." These duties, appellee argues, oblige the court to investigate, ascertain and certify, for the Department's benefit, "(a) whether a licensee owns a vehicle registered in Pennsylvania, (b) how many such vehicles licensee owns, and (c) whether an 'approved' ignition interlock device has been installed on each vehicle." Brief for Appellee, 16–17. Appellee acknowledges that determining ownership of vehicles may be a relatively simple task, but certification of the installation of the required devices requires much more investigation, including investigation into what the Department deems required for a device to be "approved." Appellee then concludes that to the extent that Act 63 requires judicial employees to engage in nonministerial, investigative functions, it implicates the judiciary's supervisory authority and imposes an obligation not properly assignable to the judiciary: "The task of determining whether a motorist has met the requirements for a restricted ignition interlock license is simply not judicial in nature." *Id.* at 17.

■ After careful review, we agree with the trial court that Act 63's delegation to the judiciary of the executive functions necessary to effectuate issuance of an ignition interlock restricted license—*i.e.,* ordering installation of the interlock system(s) as a condition to applying to the Department for a restricted license, verifying compliance, and apprising the Department of the court's determinations—impermissibly violates the separation of powers doctrine. One of the distinct and enduring qualities of our system of government is its foundation upon separated powers. *See Commonwealth v. Stern,* 549 Pa. 505, 701 A.2d 568, 570 (1997) (" 'A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government.' "), *quoting Beckert v. Warren,* 497 Pa. 137, 439 A.2d 638, 642 (1981) (citations omitted). " 'Under the principle of separation of the powers of government, . . . no branch should exercise the functions exclusively committed to another branch.' " *Stern, quoting Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698, 706 (1977) (citations omitted). The separation of powers doctrine has "historically protected the judiciary against incursions into areas other than its conduct of adversary litigation." *In re 42 Pa.C.S. 1703,* 482 Pa. 522, 394 A.2d 444, 449 (1978). *See also Commonwealth v. Sutley,* 474 Pa. 256, 378 A.2d 780, 783 (1977) ("[A]ny encroachment upon the judicial power by the legislature is offensive to the fundamental scheme of our government").

■ The doctrine also "vests in this Court supervisory power over the judiciary, including its employees." *In Re Dobson,* 517 Pa. 19, 534 A.2d 460, 464 (1987), *citing Kremer v. State Ethics Commission,* 503 Pa. 358, 469 A.2d 593 (Pa. 1983).[4] Thus, it is settled that the General Assembly "cannot constitutionally infringe upon the power of this Court to

4. This Court's supervisory authority over Pennsylvania courts is contained in Article V, Section 10 of the Pennsylvania Constitution:

a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate. *Id.*

supervise employees of the judiciary." *In Re Dobson,* 534 A.2d at 465, *citing Kremer, supra.* This Court has not hesitated to strike down legislation that clearly violates the separation of powers. *See, e.g., Kremer,* 469 A.2d at 595 (Pa.1983) (because financial disclosure provisions of Ethics Act, insofar as they apply to judges, infringe on Supreme Court's authority over courts, they are constitutionally invalid); *Sutley,* 378 A.2d at 784 (amended statute which would permit resentencing certain criminal offenders to lesser terms of imprisonment fatally interferes with final judgments of judiciary and therefore violates separation of powers).

Furthermore, "[a]s the ultimate interpreter of the Pennsylvania Constitution," it is clear that "this Court bears the responsibility of determining whether a matter has been exclusively committed to one branch of the government." *Stern, supra, citing Sweeney,* 375 A.2d at 706. As this Court also noted in *Stern:*

> The presumption in favor of the constitutionality of a statute reflects on the judiciary's respect for the legislature as a co-equal branch of government. *Commonwealth v. Sutley,* 474 Pa. 256, 260, 378 A.2d 780, 782 (1977). The legislature is precluded, however, from exercising powers entrusted to the judiciary. *Maunus v. Commonwealth, State Ethics Commission,* 518 Pa. 592, 544 A.2d 1324 (1988). Thus, the presumption of constitutionality must give way when there is any encroachment upon the judicial power by the legislature. Indeed, "it is the duty of the courts to invalidate legislative action repugnant to the constitution." *Zemprelli v. Daniels,* 496 Pa. 247, 256, 436 A.2d 1165, 1169 (1981) (citations omitted).

701 A.2d at 571–72.

The General Assembly cannot constitutionally impose upon the judicial branch powers and obligations exclusively reserved to the legislative or executive branch; nor can it in essence deputize judicial employees to perform duties more properly reserved to another of the co-equal branches of government. But, in terms of the obligation it imposes upon the trial courts to regulate the restoration of driving privileges

in this instance, that is exactly what Act 63 entails. The disputed provisions are written in mandatory language: the court "shall" order installation of approved ignition interlock devices as a condition precedent to license restoration, 42 Pa.C.S. § 7002(b); a record of that order "shall" be transmitted to the Department, *id.;* and the court "shall" certify to the Department that the offender has complied each motor vehicle owned by the offender has been equipped with an approved device. *Id.* § 7003(1); *accord id.* § 7002(b) (before Department may restore offender's operating privilege, it "must receive" court's certification). This scheme essentially forces court employees to serve the function of the Department of Transportation in discharging its executive responsibility of regulating whether and when repeat DUI offenders are entitled to conditional restoration of their operating privileges.

The constitutional difficulties inherent in this scheme have been well and cogently expressed by another *en banc* trial court, which also held this statute unconstitutional on separation of powers grounds:

Pennsylvania's Motor Vehicle Code sets forth a statutory scheme which requires the executive branch of government to issue and regulate motor vehicle licenses. The legislature has directed the Pennsylvania Department of Transportation (an executive agency) to issue driver's licenses (75 Pa.C.S. § 1510), maintain records regarding driver's licenses (75 Pa.C.S. § 1516), accept surrender of a license (75 Pa.C.S. § 1540), and complete various other functions relative to driver's licenses within Pennsylvania. In fact, section 1531 of the Vehicle Code specifically states: "The department shall administer an integrated system limited to the authority granted to the department in this title for revocation and suspension of operating privileges and for driver education, testing and control...." 75 Pa.C.S. § 1531.

Within this statutory scheme, the courts play a relatively minor role. Of course, the judiciary of this Commonwealth determines whether an individual commits one of the offenses which may have subsequent license implications.

However, the courts' role is limited to determining guilt. Thereafter, "license suspensions are collateral civil consequences rather than criminal penalties." *Commonwealth v. Duffey,* 536 Pa. 436, 639 A.2d 1174 (1994). Under our statutory scheme, actual imposition of a license suspension "has been vested in an administrative agency over which the criminal judge has no control and for which he has no responsibility." *PennDOT v. McCafferty,* 563 Pa. 14[6], 158–59, 758 A.2d 1155, 1162 (2000) citing *Duffey, supra* at 442, 639 A.2d at 1177.

*Commonwealth v. Riggs,* 53 Pa. D. & C.4th 309, 320 (2001) (Charles, J., joined by Eby, P.J. and Tylwalk and Kline, JJ.). Furthermore, it is notable that the General Assembly provided no funding mechanism to enable the judiciary to discharge the executive task it would delegate. Thus, to comply with the Act's directives, trial courts would have to divert existing judicial resources and employees from their ordinary tasks. In this regard, the legislation directly impinges upon the courts' power to supervise their employees.

The Act's conflation of the roles of the executive and the judiciary causes practical concerns as well. It is not difficult to imagine adversarial disputes arising as to the propriety of the court's predicate finding that an offender is a recidivist subject to the ignition interlock restriction, particularly where an out-of-state conviction serves as the prior offense; or as to the propriety of a certification or non-certification of compliance. Ordinarily, the trial court would be expected to preside over such controversies. But, if such a controversy arose, since it is the court itself which is assigned the task of determining recidivist status, ordering the offender to install the ignition interlock devices, and determining compliance with the order, it would in essence be evaluating its own performance. In this regard, the Act greatly compromises the ability of the court to perform its core constitutional function.

In finding Act 63's delegation of this executive responsibility to the courts unconstitutional under the separation of powers doctrine, we do not question the wisdom and necessity for reasonable measures to ensure that recidivist alcohol-impaired

drivers do not take to the streets. Nor do we question the wisdom of legislation requiring that recidivist DUI offenders be issued restricted licenses requiring them to operate only motor vehicles equipped with Department-approved ignition interlock systems. However, to the extent the legislation as enacted would have the sentencing court serve the function of the Department, and thereby impose unfunded executive responsibilities upon the judicial branch of government which have a direct impact upon the ability of the courts to supervise their employees and which compromise the trial court's ability to preside impartially if a certification dispute should arise, it is fatally flawed. For these reasons, we are constrained to hold that Act 63's delegation of executive responsibility to the courts in connection with the restoration of the operating privileges of serial DUI offenders is unconstitutional.[5]

This does not end the matter, of course. Our holding that Act 63's delegation of executive responsibilities to the trial court is unconstitutional does not ineluctably require striking the Act in its entirety. Although the parties do not argue severability and Act 63 does not itself address severability, the Statutory Construction Act directs that the individual provisions of all statutes are presumptively severable.

> The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing

---

**5.** Since we find that the court certification provisions of the Act fail on separation of powers grounds, we need not address the related due process argument that the Act is also deficient in failing to provide an effective means to challenge the determinations the sentencing court would have to make under Act 63's delegation of responsibility.

alone, are incomplete and incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925. *See Pap's A.M. v. City of Erie,* 553 Pa. 348, 719 A.2d 273, 280 (1998) (*Pap's I*), *reversed on other grounds sub nom. City of Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), *on remand Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591, 613 (2002) (*Pap's II*) (adopting severance analysis from *Pap's I*).

▆▆▆ Here, severing those portions of Act 63 which effectuate the delegation to the sentencing court of the license restoration-related executive responsibilities of ordering installation of the devices and certifying that they have been installed does not render the remainder of the statute incapable of execution in accordance with legislative intent. Our separation of powers holding can be effected by severing three provisions of Act 63: subsection 7002(b), which delegates to the court the inter-related tasks of ordering a serial DUI offender to install the devices, apprising the Department of that order, verifying compliance, and certifying compliance to the Department;[6] subsection 7003(1), which provides that, when a recidivist DUI offender seeks restoration of driving privileges, "the court shall certify to the department that each motor vehicle owned by the person has been equipped with an approved ignition interlock system;" and the last clause of subsection 7003(5), which refers back to subsection 7003(1) (*i.e.,* "after otherwise being eligible for restoration under paragraph (1)"). With these provisions severed, the legislation still requires recidivist DUI offenders seeking restoration of driving privileges to apply to the Department for an ignition interlock restricted license. 42 Pa.C.S. § 7003(2). The Act also precludes the offender in possession of such a restricted license from operating any motor vehicle on a highway in the Commonwealth unless that vehicle is equipped with an approved ignition interlock system. *Id.* § 7003(3). The Act thus still prevents recidivist DUI offenders from lawfully operating

---

**6.** As we have noted above, *see supra* n. 1, subsection 7002(a) suffers from the same separation of powers infirmity, but since it applies to first offenses, it is not strictly at issue here.

motor vehicles on the highways in Pennsylvania unless they have an approved limited license and are driving a properly-equipped vehicle.

Moreover, enforcement of the legislative purpose will still occur in the ordinary course of enforcement of the highway laws—just as it does, for example, in relation to drivers whose licenses are subject to other restrictions. Indeed, there are still sharp teeth in the law, as accountability may be maintained via enforcement of the Motor Vehicle Code's proscription of operating a motor vehicle in violation of restrictions imposed, *see* 75 Pa.C.S. §§ 1512(b), 6502(a); and enforcement of new Section 7514 of the Crimes Code, which was adopted on the same day as Act 63, and which makes it a summary offense for a person required to operate only motor vehicles equipped with an approved interlock ignition system to operate a motor vehicle on the highway without such a system. 18 Pa.C.S. § 7514.[7] The remaining portions of the Act, so construed, align the enforcement of the ignition interlock restriction with the usual prosaic means of enforcing licensing restrictions in this Commonwealth.

Having determined that these three provisions may successfully be severed from the Act, we now turn to the equal protection argument sustained below. In sustaining the equal protection claim, the trial court focused on two "arbitrary classifications" it detected in the Act: (1) a classification which discriminates against lessees and other non-owners of motor vehicles because the Act allegedly renders them incapable of securing an interlock restricted license since the trial court cannot certify that they have installed devices on owned vehicles; and (2) a classification which allegedly discriminates against owners of multiple vehicles, by requiring them to install the devices on all owned vehicles. We offer no view on the merits of these claims because it is apparent that, with the constitutionally infirm provisions removed from the Act, the bases for these challenges disappear. The factual predicate

7. A violation of Section 7514 results in a mandatory fine of not less than $200 nor more than $1,000 and a term of imprisonment of not more than thirty days. *Id.*

for each challenge arises from the provisions of the Act delegating to the trial court the responsibility of regulating the restoration of operating privileges by ordering the devices installed "on each motor vehicle owned" by the offender and then investigating and certifying compliance to the Department. Since we have struck these provisions as unconstitutional, we need not reach the derivative, facial equal protection challenges. Should appellee or any other serial DUI offender be aggrieved by an actual determination made by the Department in enforcing the remaining provisions of the Act, the administrative setting is the appropriate forum to raise such a challenge.

In summary, we hold that the provisions in Act 63 which delegate to the courts the executive responsibility, more properly vested in the Department of Transportation, of regulating whether and when repeat DUI offenders are entitled to conditional restoration of their operating privileges, are unconstitutional, but severable. Accordingly, those provisions are invalidated. The remaining provisions of Act 63 still authorize the Department to impose an ignition interlock restriction upon serial DUI offenders who seek restoration of their operating privileges at the expiration of the one-year mandatory suspension of their licenses, and the Commonwealth has available to it ample means of enforcing that provision.

The trial court's February 12, 2001 order, which vacated that part of its original judgment of sentence which would have effectuated the invalid provisions of Act 63, is hereby affirmed.

Former Chief Justices FLAHERTY and ZAPPALA did not participate in the decision of this case.