[J-78-2014] [MO: Todd, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 98 MAP 2013 |
| | : |
| Appellant | : Appeal from the order of the Chester |
| | : County Court of Common Pleas, Criminal |
| | : Division, at No. CP-15-CR-0001260-2013 |
| v. | : dated December 17, 2013. |
| | : |
| | : |
| KYLE JOSEPH HOPKINS, | : |
| | : ARGUED:   September 10, 2014 |
| Appellee | : |

**DISSENTING OPINION**

**MR. JUSTICE EAKIN**                                    **DECIDED: June 15, 2015**

Because I find the invalid provisions of 18 Pa.C.S. § 6317 are severable, I disagree that all of § 6317 is now rendered unconstitutional.

1 Pa.C.S. § 1925 provides that every statute is presumed severable unless one of two exceptions[1] applies.   Functionally, both exceptions depend upon legislative intent. See id.   The first exception asks what the legislature would have done in the absence of

---

[1] The presumption applies unless:

[(1)] the court finds that the valid provisions … are so essentially and inseparably connected with, and so depend upon, the void provision[s] or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or [(2)] the court finds that the remaining valid provisions, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925.

the void provisions; the second exception asks whether the remaining provisions can effectuate the General Assembly's intent.

In answering these questions, the majority frames its analysis narrowly, focusing on the statute's procedural language; respectfully, such an approach does not answer the questions of § 1925. What was the purpose of the enhanced sentence for drug sales near schools? It was clearly to create drug-free zones in areas with a high density of children.[2] What was the purpose of the procedural methodology enacted therewith? To ensure the enhanced penalties were respected and enforced. If there is any other reasonable or logical explanation for the statute's framework, we have yet to hear it.

The procedure provided for offends Alleyne v. United States, 133 S. Ct. 2151 (2013), of this there is no doubt, and no quarrel from the Commonwealth. The initial question asked by § 1925 is "what would the legislature have done in the absence of the void provisions?" That is, would the legislature still want enhanced penalties for drug sales near our schools? Obviously it would — that was the whole purpose of the statute in the first place. It is the manifest goal. The procedure to achieve it was not the goal; the procedure, if anything, reinforced the legislative desire to ensure the increased penalties were not pushed aside.

The majority suggests we cannot presume the legislature would have enacted the substantive provisions absent the procedural provisions, as it had the alternative of enhanced sentencing guidelines and chose another course. See Majority Slip Op., at 24 n.5. Abjuring the general discretionary nature of sentencing guidelines, the legislature

---

[2] See, e.g., Commonwealth v. Dixon, 53 A.3d 839, 844 (Pa. Super. 2012) ("The legislature clearly intended to segregate children from drugs where they learn and play and, to promote that policy, it created drug-free zones[.]"); Commonwealth v. Campbell, 758 A.2d 1231, 1237 (Pa. Super. 2000) ("It is our finding that the General Assembly's goal and purpose was to protect the children of our communities from the ravages and evils of the illegal drug trade that pervades our country.").

enacted a most definitive, strident procedure, that included removal of the power of a court to ignore the increased penalty or impose anything less, and codifies a Commonwealth appeal for refusal to apply it. Does this reflect a desire to assure the substance is obeyed, or a desire to elevate process over substance? Establishing sentencing guidelines would not ensure the imposition of a minimum sentence — a situation that the General Assembly repeatedly indicated it wanted to prevent. See 18 Pa.C.S. § 6317(a) (establishing minimum sentence "notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or statute to the contrary"); id., § 6317(c) ("Sentencing guidelines … shall not supersede the mandatory sentences provided in this section."); id. ("There shall be no authority for a court to impose on a defendant to which this section is applicable a lesser sentence than provided for in subsection (a)[.]").

In other words, the legislature wanted to remove any discretion concerning the minimum sentence. To propose it would have reinserted discretion into the equation simply because Alleyne renders the procedural provisions infirm suggests the General Assembly "would want those 'possessing a firearm while trafficking drugs[]' to serve higher sentences if it can be found by a judge by a preponderance, but not if the element is ... found by a jury beyond a reasonable doubt." Commonwealth v. Newman, 99 A.3d 86, 106 (Pa. Super. 2014) (en banc) (Mundy, J., concurring) (alteration in original). Respectfully, such a conclusion is absurd. See 1 Pa.C.S. § 1922(1). Given the legislature's repeated references for the mandatory minimum to trump any provision to the contrary, common sense tells us we can safely presume it would have enacted the

substantive provisions absent the statute's procedural language, had it been prescient enough to anticipate the Alleyne decision.[3]

As for the second exception, the remaining provisions still effectuate the legislative intent of establishing drug-free school zones. See 18 Pa.C.S. § 6317. The majority states special verdicts would not cure § 6317's notice and appeal provisions, id., § 6317 (b), (d). See Majority Slip Op., at 19. Yet, as found by the majority, those provisions are per se infirm under Alleyne. See id., at 16-17.

Citing Commonwealth v. Samuel, 961 A.2d 57 (Pa. 2008), the majority emphasizes Samuel's discussion of the legislative intent underlying a similar mandatory minimum statute, 42 Pa.C.S. § 9714. However, I find Commonwealth v. Belak, 825 A.2d 1252 (Pa. 2003), more analogous to the instant matter because it addressed § 9714's severability, rather than whether the facts constituted a "crime of violence" under § 9714. Examining the second severability exception in Belak, we stated: "In enacting section 9714, the legislature sought to punish violent recidivists, and [the valid provision] can accomplish that goal without reference to the invalid [provision]." Id., at 1257. I would employ a similar approach here, focusing on the General Assembly's intent to create

---

[3] The majority would make much of the legislature not wanting enhancement to create a new crime or add an element to the crime. I cannot subscribe to the notion that this is a "critical statement of the legislature's intention[.]" Majority Slip Op., at 25 n.6. Respectfully, those provisions are about process, not substance.

What the legislature wanted was a result, and it tried to accomplish it by a process later held to be violative of the federal constitution. But the process it enacted was not the aim of the statute; that process was to facilitate achieving the manifest aim, which is substantive. The intent of the legislature was not to pass a law such that it does not create a new crime or element. These provisions to avoid additional hurdles to the statute's true purpose — these were not provisions that themselves had anything to do with drug-free school zones, which was the purpose of the law. This is why they are severable, not reasons why they are not.

drug-free zones in youth-centric areas — an intent which the substantive provisions can still effectuate.

The majority further notes Samuel's negative discussion of special verdicts, see Samuel, at 64, remarking that the proposed amendment to Pa.R.Crim.P. 648, which would standardize the use of special verdicts for Alleyne purposes, is "tangential" to a severability analysis. Majority Slip Op., at 21 n.4. A closer examination of the Committee Report reveals using special verdicts to comply with Alleyne has become "'commonplace.'" Commonwealth's Brief, at 38 (citation omitted). The proposed amendment would not create a new process — a process already exists. Hence, as the amendment aims to clarify, not create, a process that effectuates § 6317's intent, I disagree that the amendment is tangential to the question of severability. As for the majority's reliance on Samuel's discussion of special verdicts, we must remember Samuel cited a footnote from a 40-year-old plurality decision for the proposition that special verdicts are "universally condemned" within the criminal context. Samuel, at 64 (citing Commonwealth v. Campana, 304 A.2d 432, 438 n.27 (Pa. 1973) (plurality opinion)). As Samuel was decided pre-Alleyne, I do not find its discussion of special verdicts convincing or dispositive. See Commonwealth v. Jacobs, 39 A.3d 977, 988 (Pa. 2012) (Saylor, J., concurring) (citation omitted) (questioning policy of categorically prohibiting special verdicts in criminal context).

Finally, the majority distinguishes the present case from Commonwealth v. Mockaitis, 834 A.2d 488 (Pa. 2003), wherein we concluded the second severability exception did not apply because there was a pre-existing process, i.e., seeking restoration of driving privileges from the Pennsylvania Department of Transportation, to effectuate the legislative intent of preventing DUI recidivists from operating a vehicle without a limited license. Id., at 502-03. At the outset, this rationale seems sound;

however, citing to other provisions within the Vehicle Code, we further stated in Mockaitis that "enforcement of the legislative purpose will still occur in the ordinary course of enforcement[.]"  Id., at 503 (citations omitted).  I see no difference here.  Execution of the legislative purpose to develop drug-free school zones by imposing a mandatory two-year minimum would still occur in an ordinary manner, i.e., by utilizing our existing Rules — the execution of which does not require the creation of a new procedural framework.  See Newman, at 105 (observing numerous criminal statutes are executed in ordinary manner despite absence of proof-of-sentencing mechanism).

Again, the law asks two straightforward questions when considering severability: what would the legislature have done in the absence of the void provisions, and can the remaining provisions effectuate the General Assembly's intent?  Would the legislature have wanted increased school-zone penalties if its procedural plan was void?  Of course it would — the procedure was the tail, not the dog.  Can the valid portion of the statute effectuate that intent?  A procedure that complies with Alleyne is simple, in place, and would achieve the legislative purpose.  Accordingly, I would hold the invalid provisions are severable, and respectfully dissent.