J-S09013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAROL MCNABB | : | |
| | : | |
| Appellant | : | No. 1378 WDA 2022 |

Appeal from the Judgment of Sentence Entered September 1, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0002714-2021

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: JUNE 22, 2023**

Appellant, Carol McNabb, appeals from the judgment of sentence of six months' probation, imposed after she was convicted, following a non-jury trial, of driving under the influence of alcohol ("DUI"), 75 Pa.C.S. § 3802(a)(1), and one summary traffic offense.  Appellant solely challenges the weight of the evidence to sustain her conviction.  We affirm in part and vacate in part.

The trial court set forth a detailed summary of the facts and procedural history of Appellant's case, as follows:

**Factual History**

The instant case arises out of a traffic stop and subsequent investigation of [Appellant's] vehicle on June 5, 2021[,] in Greensburg, Westmoreland County.  The evidence presented at a non-jury trial established that, while patrolling in a marked police cruiser in the early morning hours on the date of the incident, Police Officer Jonathan Murphy, of the City of Greensburg Police Department, observed a silver Ford Escape in the right lane make an illegal left-hand turn onto Bell Way in Greensburg.  Officer Murphy followed the vehicle and observed it pull past the white

stop line at a red traffic light before making a "relatively wide" turn, in which the tires of the right side of the car crossed over the parking stalls on the right-hand side. Officer Murphy also observed the vehicle swerve slightly into the left lane and then jerk back into the right lane and "fade slightly over into the left-hand lane" with the driver's side tires on the yellow center line. Officer Murphy indicated that he activated his lights and sirens and initiated a traffic stop of the vehicle. At this time, Officer Murphy testified that the driver of the vehicle got out of her car and attempted to walk towards his patrol vehicle; however, he instructed the driver to remain in her vehicle. Upon approach of the vehicle, Officer Murphy stated that [Appellant] was a little confused, and he observed her fumble her keys before turning the vehicle on to put down her window. Officer Murphy identified the driver of the vehicle as [Appellant]. He indicated that [Appellant] could not really give an explanation as to where she was coming from other than saying she was coming from stores. While speaking with her, Officer Murphy detected [Appellant's] speech to be a little slowed and slurred, and he observed [Appellant] to have glassy, bloodshot eyes. Officer Murphy testified that he requested [Appellant] to perform standardized field sobriety tests and when she consented, Officer Murphy conducted the horizontal gaze nystagmus (HGN), the walk and turn, and the one[-]leg stand tests.

During the HGN test, Officer Murphy … detected some indicators of impairment. During the walk and turn test, which was conducted in a flat and well-lit parking lot, Officer Murphy stated that [Appellant] appeared confused with his instructions, and she was unable to get into the starting position, even after removing her shoes. Officer Murphy testified that [Appellant] started the test before he instructed her to do so, and he observed more indictors [*sic*] of impairment throughout the test where [Appellant] took too many steps and turned improperly. During the one[-]leg stand test, Officer Murphy indicated that [Appellant] attempted to lift her foot off the ground twice and stated to Officer Murphy that she could not do the test. According to Officer Murphy, [Appellant] submitted to a portable breath test (PBT) and after several error readings where [Appellant] was not adequately blowing into the device, [Appellant] produced a sample, which indicated a presence of alcohol. Based on Officer Murphy's observations, he opined that "she was too impaired to be behind the wheel of a vehicle[] … []due to alcohol[."] After handcuffing [Appellant] and placing her under arrest in the rear of his patrol

- 2 -

vehicle and informing her of her rights, Officer Murphy testified that [Appellant] indicated she was getting a lawyer and he transported [her] to City Hall for processing. At this time, Officer Murphy indicated that he smelled a strong odor of alcohol coming from [Appellant's] person within his patrol vehicle. Officer Murphy indicated that on a scale of zero to a hundred, he was "a hundred" percent sure that [Appellant] was impaired at this time. Officer Murphy's testimony reflected that he has served as a police officer since 2015; he confirmed he is familiar with the Motor Vehicle Code and violations of the Crimes Code; and he indicated that he has effected "between 10, 20, maybe a little more" DUI arrests in his career.

[Appellant] also elected to testify during the non-jury trial. [Appellant] testified that she was driving on the Ohio and Pennsylvania turnpikes and intended to take the Greensburg exit; however, she missed the exit and got off at a New Stanton exit instead. [Appellant] testified that she was lost, very tired, and very upset. [She] stated that she was driving the entire time, and she denied consuming any alcoholic beverages. [Appellant] denied performing the walk and turn test because she said she had a blister from wearing her new high heels, and she allegedly stepped on a rock when she exited her vehicle.

## Procedural History

On August 10, 2021, a criminal complaint was filed against [Appellant,] charging her with [DUI (count one)] and four related summary offenses. On May 12, 2022, [Appellant] proceeded to a non-jury trial before this court. During trial, [Appellant] represented herself *pro se*. At the conclusion of the non-jury trial, the court found [Appellant] guilty of counts one and three[.][1] [Appellant] was found not guilty of the remaining charges. Sentencing was deferred pending a limited pre-sentence investigation. Sentencing was initially scheduled for August 5, 2022; however, the matter was continued thirty (30) days on motion of [Appellant]. Additionally, the court appointed Attorney Kenneth Noga to represent [Appellant] in this matter. On September 1, 2022, [Appellant] was sentenced at count one to serve six (6) months['] probation with thirty (30) days home electronic monitoring and costs and fees. She was sentenced to a twelve (12) month license suspension. At count [three, Appellant] was ordered to pay a fine and costs and fees. The Commonwealth moved to amend count one to an ungraded misdemeanor and to strike the language of refusal. Additionally,

[Appellant] was granted windows for her husband's medical needs.

> [1] [Appellant] was found guilty of count three, improper left turn, in violation of 75 Pa.C.S.[] § 3331(b).

On September 7, 2022, [Appellant] filed a post-sentence motion before this court. Prior to conducting a hearing on the matter, the court denied the post-sentence motion by order of court dated November 21, 2022. On November 22, 2022, [Appellant] filed a timely notice of appeal to the Pennsylvania Superior Court. On November 29, 2022, this court ordered [Appellant] to file a [Pa.R.A.P. 1925(b)] concise statement of errors complained of on appeal. On November 30, 2022, [Appellant] filed said statement.

Trial Court Opinion ("TCO"), 12/9/22, at 1-5 (citations to record and unnecessary capitalization omitted). The trial court filed its Rule 1925(a) opinion on December 9, 2022.

Herein, Appellant presents a single issue for our review: "Whether … Appellant's conviction is supported by the weight of the evidence when … Appellant's testimony presents an equally plausible explanation for her behavior – being lost, tired, and upset – as opposed to intoxication?" Appellant's Brief at 2.

Our standard of review for a challenge to the weight of the evidence is well-established:

A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly

- 4 -

exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2021) (citation and internal quotation marks omitted).

Instantly, Appellant claims that there were "two equally plausible explanations for [her] behavior during and following her operation of a motor vehicle – intoxication and being tired, lost, and upset." Appellant's Brief at 6. She avers that the Commonwealth has failed to conclusively demonstrate her behavior was "the result of intoxication and not her flustered nature;" thus, the trial court's verdict was against the weight of the evidence. ***Id.*** Appellant argues:

> For each indicator of "intoxication" observed by law enforcement, being upset, lost, and extremely tired is a plausible cause of the same symptom. Although Officer Murphy testified … Appellant's breath was positive for alcohol, she denied consuming any alcohol that evening. Indeed, there is no evidence any bottles of alcohol – empty or otherwise – were observed or seized from the vehicle. In addition, there is no evidence … Appellant stopped anywhere to consume alcohol.
>
> Officer Murphy's observations of … Appellant, including her bloodshot eyes, slurred speech, and her failure to complete the field sobriety tests to satisfaction are all equally explainable by both alcohol intoxication and extreme tiredness in conjunction with being upset. Indeed, even her refusal of chemical testing is understandable given her being lost and upset prior to the motor vehicle stop.

***Id.*** at 10-11 (citations to record omitted). Noting that "a guilty verdict cannot be based on surmise or conjecture[,]" ***id.*** at 11 (citing ***Commonwealth v. Karkaria***, 625 A.2d 1167, 1170 (Pa. 1993)), Appellant concludes:

> When both theories are viewed together, it is difficult to determine which is truth. As this difficulty appears to have been resolved in

favor of the speculative conclusion that … Appellant was intoxicated to such a degree that she could not operate the vehicle[,] the guilty verdict is not supported by the weight of the evidence. To accept one speculative conclusion and ignore the other essential facts before the [c]ourt is a miscarriage of justice that should shock the conscience of the Court.

*Id.* Accordingly, Appellant maintains that her conviction should be vacated.

We disagree. The trial court had the opportunity to hear and see the evidence presented and to assess the credibility of the witnesses. TCO at 5. It "afforded great weight to Officer Murphy's testimony because he was a credible witness." *Id.* at 6. To the contrary, the trial court found Appellant's testimony to be "incredible and self-serving[,]" noting that her behavior during the non-jury trial "was at times rude and disrespectful." *Id.* It opined:

> [T]he entirety of the evidence presented at trial convinces the [c]ourt that the evidence was in support of the verdict rendered. Through the duration of the non-jury trial, the [c]ourt considered the evidence presented by the Commonwealth, namely the testimony of Officer Murphy, who testified that he observed [Appellant] commit multiple traffic infractions while driving her vehicle. Officer Murphy's testimony established that [Appellant] displayed indicia of intoxication. Officer Murphy observed [Appellant] with glassy, bloodshot eyes; slowed, slurred speech; a strong odor of alcohol coming from [Appellant's] person; a positive breath sample on the PBT; and further indicators of impairment while performing all three standardized field sobriety tests. Based upon Officer Murphy's training, experience, and observations, Officer Murphy opined that on a scale of one to one hundred, he was one hundred percent sure [Appellant] was impaired and that she was ***too*** impaired to be behind the wheel of a vehicle due to alcohol.

*Id.* at 5-6 (emphasis in original). The trial court disagreed with Appellant's contention that her inability to operate a motor vehicle in a safe manner may have been due to her tiredness rather than the consumption of alcohol, and it

found that the Commonwealth established proof of Appellant's guilt beyond a reasonable doubt. *Id.* at 6. Based on its review of the entire record, the trial court did "not find that the verdict is inconsistent or so contrary to the evidence as to shock this court's sense of justice." *Id.*

Based on our review of the record, we conclude that the trial court's decision is supported by the evidence, and we discern no abuse of discretion. Appellant essentially asks us to reweigh the evidence in her favor, substituting our judgment for that of the trial court, which we cannot do. *See Houser*, *supra*. Accordingly, no relief is warranted on Appellant's claim.

Nevertheless, in reviewing Appellant's claim, we note the sentence imposed by the trial court included a 12-month driver's license suspension. *See* Sentencing Order, 9/1/22, at 2. In imposing the suspension, the court acted outside its authority; hence, that aspect of the sentence is illegal. Although Appellant did not raise this issue on appeal, we may raise the issue of sentence legality *sua sponte*. *See Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa. Super. 2013). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." *Id.* (citation omitted).

As our Supreme Court has aptly explained,

Pennsylvania's Motor Vehicle Code [(75 Pa.C.S. §§ 101-9805 ("Vehicle Code"))] sets forth a statutory scheme which requires the executive branch of government to issue and regulate motor vehicle licenses. The legislature has directed the Pennsylvania Department of Transportation (an executive agency) to issue driver's licenses…, maintain records regarding driver's licenses…, accept surrender of a license…, and complete various other

- 7 -

functions relative to driver's licenses within Pennsylvania. In fact, section 1531 of the Vehicle Code specifically states: "The department shall administer an integrated system limited to the authority granted to the department in this title for revocation and suspension of operating privileges and for driver education, testing and control…." 75 Pa.C.S. § 1531.

Within this statutory scheme, the courts play a relatively minor role. Of course, the judiciary of this Commonwealth determines whether an individual commits one of the offenses which may have subsequent license implications. However, the court's role is limited to determining guilt. Thereafter, "license suspensions are collateral civil consequences rather than criminal penalties." **Commonwealth v. Duffey**, … 639 A.2d 1174[, 1176] ([Pa.] 1994). Under our statutory scheme, actual imposition of a license suspension "has been vested in an administrative agency over which the criminal judge has no control and for which he has no responsibility." **PennDOT v. McCafferty**, … 758 A.2d 1155, 1162 ([Pa.] 2000) [(]citing **Duffey**, … 639 A.2d at 1177[)].

**Commonwealth v. Mockaitis**, 834 A.2d 488, 500-01 (Pa. 2003) (citation omitted).

Following **Mockaitis**, our legislature passed section 3804, which grants the Pennsylvania Department of Transportation the exclusive authority to impose license suspensions. **See** 75 Pa.C.S. § 3804(e)(1)(i) ("The department shall suspend the operating privilege of an individual … upon receiving a certified record of the individual's conviction of … an offense under section 3802 [relating to DUI offenses.]").[1]

Based on the foregoing, it is clear that Pennsylvania law grants the Department of Transportation, not the courts, the authority to suspend a

---

[1] We note that section 3804(e)(2)(iii) provides an exception to the license suspension requirement for defendants convicted of a first offense under section 3802(a). **See** 75 Pa.C.S. § 3804(e)(2)(iii).

license. Therefore, we conclude that the trial court in this case lacked the authority to suspend Appellant's license and, in that respect, the sentence is illegal. Accordingly, we vacate the license suspension aspects of the September 1, 2022 sentence. We affirm all other aspects of her judgment of sentence.

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/2023